UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| REBECCA COIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:19-cv-00112-AGF |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Rebecca Coin is not disabled, and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, or supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f.  For the reasons set forth below, the decision of the Commissioner will be affirmed.

BACKGROUND

The Court adopts the statement of facts set forth in Plaintiff's Statement of Material Facts (ECF No. 19-1) and Defendant's Statement of Additional Facts (ECF No. 22-2).[1]  Together, these statements provide a fair description of the record before the Court.  Specific facts will be discussed as needed to address the parties' arguments.

---

[1] The Court also notes the additions and clarifications supplied in Defendant's Response to Plaintiff's Statement of Facts.  ECF No. 22-1.

Plaintiff was born on September 29, 1984 and received a college degree in 2007. Tr. 71, 75. She previously worked part time as a hotel housekeeper, a factory worker, and a helper in a correctional rehab facility. Tr. 93-97, 270. Plaintiff filed an application for disability insurance benefits on May 12, 2016 and an application for supplemental security income on May 18, 2016, in both instances alleging an onset date of January 1, 2011 (later amended by counsel to April 19, 2013).[2] Her applications were denied at the administrative level, and she thereafter requested a hearing before an Administrative Law Judge ("ALJ"). On June 21, 2018, the ALJ heard testimony from Plaintiff, who was represented by counsel, and from Melinda Stahr, a vocational expert ("VE"). On September 4, 2018, the ALJ issued a decision finding that Plaintiff had the residual functional capacity ("RFC") to perform certain jobs that exist in significant numbers in the national economy and was thus not disabled under the Act. The ALJ found that Plaintiff had the RFC to perform a reduced range of sedentary work as defined by the Commissioner's regulations, except for the following limitations:

> [She] can lift up to 10 pounds occasionally. She can stand/walk for about 2 hours and sit for up to 6 hours in an 8-hour workday, with normal breaks. She can occasionally climb ramps or stairs, but she can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, and crouch, but she can never kneel or crawl. She can never overhead reach using her bilateral

---

[2] Plaintiff previously filed an earlier application for benefits on May 25, 2011 alleging an onset of March 23, 2011. That application was denied on April 18, 2013. Tr. 110-121. The ALJ found that Plaintiff had severe impairments of lordosis, scoliosis, Ehlers-Danlos Syndrome, bipolar disorder, post-traumatic stress disorder, and alcohol abuse. Tr. 112. The ALJ found that Plaintiff had non-severe impairments of rheumatoid arthritis and somatoform disorder. Tr. 112. The ALJ found that Plaintiff's claim of fibromyalgia was not medically determinable. Tr. 113. The ALJ did not find credible Plaintiff's claims of functional limitation. Tr. 116. The ALJ found that Plaintiff was capable of performing light work with certain restrictions. Tr. 114.

> upper extremities.  She should avoid concentrated exposure to operational control of moving machinery.  She should avoid unprotected heights and exposure to hazardous machinery.  Her work is limited to simple, routine, and repetitive tasks.  She should have no interaction with the public and only occasional interaction with co-workers and supervisors.

Tr. 39.

The ALJ next found that Plaintiff could perform certain sedentary unskilled jobs listed in the Dictionary of Occupational Titles ("DOT") (e.g., table worker, document preparer, and touch-up inspector), which the VE had testified that a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled under the Act.  On May 15, 2019, the Appeals Council denied Plaintiff's request for review.  Thus, Plaintiff has exhausted his administrative remedies, and the ALJ's decision is the final decision of the Commissioner for this Court's review.

Plaintiff asserts two points of error: (1) that the ALJ's determination of her RFC is conclusory and lacks rationale or reference to the supporting evidence and (2) that the ALJ failed to conduct a proper pain evaluation.

**The ALJ's Decision (Tr. 33-50)**

The ALJ found that Plaintiff has the following severe impairments: attention deficit hyperactivity disorder (ADHD), bipolar disorder, generalized anxiety disorder,

3

Ehlers-Danlos Syndrome (EDS),[3] chronic pain disorder, kyphoscoliosis,[4] postural orthostatic tachycardia syndrome (POTS),[5] and neurodermatitis/acne excoriée.[6]  Tr. 35.  However, he found that none of these impairments, alone or in combination, met or medically equaled the severity of impairments listed in the Commissioner's regulations.[7]  Tr. 37.  Plaintiff does not challenge the ALJ's decision with respect to mental impairments.  As such, the Court will focus its review on the ALJ's findings and conclusions with respect to Plaintiff's physical impairments.  As relevant to that inquiry, the ALJ reviewed and summarized the evidence as follows.

Plaintiff did not complete a function report but testified that she lived with her two children, ages 10 and 14.  The younger child is on the autism spectrum and requires

---

[3]  Ehlers-Danlos syndrome is a connective tissue disorder characterized by hyper-elasticity and fragility of the skin, hyper-mobility of the joints, and fragility of the cutaneous blood vessels.  ECF No. 22, p. 2, citing Stedman's Medical Dictionary (2014), WL Stedmans Medical Dictionary 879410.

[4]  Kyphoscoliosis is a lateral and posterior curvature of the spine.  ECF No. 22, p. 2, citing Stedman's Medical Dictionary (2014), WL Stedmans Medical Dictionary 473870.

[5]  POTS is marked by lightheadedness and increased heart rate when a person stands up from a reclined position.  ECF No. 22, p. 2 citing Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/16560-postural-orthostatic-tachycardia-syndrome-pots (last visited October 20, 2020).

[6]  Other than a reference to skin lesions related to her EDS (ECF No. 19, p. 6, citing Tr. 560), Plaintiff does not rely on dermatological conditions to support her challenge here.

[7]  Additionally, Plaintiff alleged disability due to hyperthyroidism and bone spurs, and, the ALJ noted, the medical evidence reflected other conditions of vascular instability or Raynaud's phenomena and a bony abnormality in Plaintiff's right lower rib.  The ALJ found these impairments non-severe.  Tr. 36.  Plaintiff also alleged impairments related to panic disorder and post-traumatic stress disorder.  The ALJ found no objective medical evidence supporting these conditions.  Tr. 36.  Plaintiff does not challenge the ALJ's findings in any of these regards.

significant assistance, for which a home health aid visits regularly. Plaintiff described various difficulties using her upper extremities due to her EDS (e.g., difficulty writing, sewing, raising her arms above her head, brushing her teeth, lifting a gallon of milk). Her older child assists her with grooming, cooking, and household chores. She stated that she could stand for 10-15 minutes if able to move around; she could walk for 20-30 minutes; and she could sit in a chair 10-30 minutes. She did simple stretching and strength exercises but struggled to maintain sufficient energy to be productive.

The ALJ found that, although Plaintiff's impairments could reasonably be expected to cause some of her alleged symptoms, Plaintiffs statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. The ALJ acknowledged that Plaintiff's treatment records consistently indicated general fatigue and musculoskeletal symptoms due to her combination of impairments, including EDS. As such, the ALJ found that Plaintiff was limited to a reduced range of sedentary work as described in the RFC. However, the ALJ found that the objective evidence in the record as a whole did not support Plaintiff's alleged degree of functional limitation in her upper extremities.

The ALJ summarized Plaintiff's treatment records from June 2013 to January 2018 as follows. In June 2013, Plaintiff's orthopedic specialist, Dr. Jimmy Bowen, diagnosed Plaintiff with probable EDS, kyphoscoliosis, and myofascial pain affecting the right parascapular and sacroiliac areas. He referred her to the genetics department at Washington University for further evaluation of her EDS. In October 2013, her examination was unchanged. In January 2014, Dr. Bowen noted an increase in the right

5

sacroiliac provocation.  He noted that Plaintiff was neurologically intact and encouraged her to exercise as she was able.

In March 2014, Plaintiff was examined by Dr. Marcia Willing at Washington University.  Dr. Willing observed mild scoliosis and joint laxity but normal reflexes and muscle tone and symmetric movement of her extremities.  Dr. Willing assessed Plaintiff to have a hypermobility form of EDS.  She attributed Plaintiff's fatigue to EDS and her dizziness to POTS.  Dr. Willing advised Plaintiff to engage in exercise focused on toning and range of motion.

In December 2014, Dr. Bowen noted the same abnormalities as previously stated and also noted that Plaintiff had normal strength in her neck and low back, and normal sensation in her upper and lower extremities.  He encouraged her to continue with water exercise.  In March, May, and August 2015, Dr. Bowen's examinations were "essentially unchanged."  In November 2015, Dr. Bowen noted the same abnormalities and mild pain in Plaintiff's knee, though no swelling.  In February 2016, Dr. Bowen noted skin lesions on Plaintiff's face.  Her pain levels were unchanged.  In May 2016, Plaintiff's skin was better after dermatological treatment; she reported no change in her pain level.  In February 2017, Dr. Bowen adjusted Plaintiff's medications due to edema.

In September 2017, Plaintiff saw a nurse practitioner in Dr. Bowen's office, Leslie Evans-Hodge.  Plaintiff reported improvements in her skin and 60% improvement in daily function with her new pain medication.  Plaintiff had a stable gait, intact sensations, and good strength in her upper and lower extremities.  Plaintiff had tenderness in her back but good grip strength and range of motion, and good strength in her right arm.

6

Around that time, Dr. Bernard Burns replaced Dr. Bowen as Plaintiff's orthopedist. In November 2017, Plaintiff had a positive FABERS test on the right but negative straight leg tests bilaterally, stable gait, and no neurologic abnormalities. Plaintiff reported an 80% decrease in her pain levels with daily hydrocodone. Nurse Evans-Hodge encouraged Plaintiff to increase her exercise routine to at least 30 minutes three times per week. In December 2017, Plaintiff reported pain in her shoulder when reaching overhead. Physical examinations were the same, though FABERS testing was negative.

In January 2018, Dr. Burns noted tenderness in the back and extremities. In February and May 2018, examinations showed tenderness in the back, painful and stiff overhead motions, and tenderness and restricted motion in the shoulder. Plaintiff showed no acute distress, a stable gait, and intact sensation and reflexes. As of May 2018, Plaintiff's diagnoses were chronic pain syndrome, complex musculoskeletal pain related to EDS, and secondary kyphoscoliosis and shoulder dyskinesia from musculoskeletal laxity.

The ALJ also summarized treatment records from other facilities. In January 2015, Plaintiff presented to St. Genevieve County Memorial Hospital complaining of back pain and difficulty lifting. The examination revealed spinal tenderness and muscle spasms but no neurological abnormalities, and full range of motion in the extremities. Dr. Ray Jenson was only able to conduct a limited examination due to Plaintiff's sensitivity. She declined several treatment options but accepted a Medrol dose pack. Plaintiff returned to the same hospital twice in June 2015 with a skin rash. Dr. John Garcia diagnosed folliculitis. Dr. Bradley Stoner diagnosed an allergic reaction,

prescribed steroids and topical cream, and advised Plaintiff to follow up with a dermatologist.  Examinations revealed no other abnormalities.  In October 2015, Plaintiff visited the Pointe Basse Family Healthcare Clinic and reported no relief for her skin issues with steroids and antibiotics.

Based on the medical evidence as summarized above, the ALJ found that Plaintiff is limited to performing the reduced range of work stated in the RFC.  The ALJ acknowledged that Plaintiff exhibited lumbar and myofascial tenderness, along with orthopedic abnormalities affecting her right hip and shoulder areas.  However, she has consistently had a normal gait and no signs of acute distress, and she reports relief with medication.

The ALJ noted some inconsistency in the medical records with respect to Plaintiff's physical activity.  Some records suggested that Plaintiff engaged in daily activity including running and swimming.  Plaintiff testified that these records were inaccurate, and Dr. Bowen's records indicated that Plaintiff had difficulty exercising and had been encouraged to work on stretching and water exercises.  The ALJ concluded that Dr. Bowen's assessment was "more likely to be accurate" and thus restricted the RFC to a reduced range of sedentary work accordingly.

Finally, the ALJ noted that Plaintiff's treatment records did not reflect her hearing testimony recounting frequent loss of vision or shakiness, nor did the records reflect any cardiac issues.  The ALJ acknowledged Plaintiff's POTS diagnosis but did not find it to be a severe impairment causing disabling limitations.

Next, the ALJ referred to the VE's testimony that a hypothetical person with Plaintiff's RFC and vocational factors (e.g., age, education, work experience) could perform certain unskilled jobs listed in the DOT (e.g., table worker, document preparer, touch-up inspector), which were available in significant numbers in the national economy. The VE testified that the DOT did not address a restriction for overhead reaching, so she based her testimony on this factor on her own professional experience as a vocational counselor.

Ultimately, the ALJ concluded that Plaintiff had the RFC to perform a reduced range of sedentary work, with the physical limitations previously described, and that Plaintiff could perform work existing in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled under the Act.

In her brief before this Court, Plaintiff asserts that (1) the ALJ's determination of her RFC is conclusory and does not provide rationale or reference to supporting evidence and (2) the ALJ failed to conduct a proper pain evaluation. Plaintiff asks that the ALJ's decision be reversed and remanded for further evaluation.

## DISCUSSION

**Statutory Framework**

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation

9

process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *See, e.g., Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce testimony by a VE (or other similar evidence) to meet the step-five burden. *See Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**Standard of Review**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th

Cir. 2011). The court "may not reverse merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id*. (citations omitted). A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.* The Court "defer[s] heavily to the findings and conclusions of the Social Security Administration." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015).

**RFC Finding and Weight of the Evidence**

In her first point, Plaintiff asserts that the ALJ's RFC assessment is conclusory and does not contain any rationale or reference to supporting evidence. Within the framework of the Court's standard of review, the Court understands this as a challenge to the sufficiency of the evidence supporting the ALJ's decision.

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). An ALJ's failure to

11

cite specific evidence does not indicate that such evidence was not considered. *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010).

Plaintiff argues that there is no medical evidence addressing her ability to function in the workplace. More specifically, she argues that the record fails to explain how her musculoskeletal conditions and chronic pain affect her ability to sit, stand, and use her extremities. But it is Plaintiff's own burden to prove her RFC. *Hurd v. Astrue*, 621 F.3d 732, 738 (8th Cir. 2010). Plaintiff failed to provide a medical source statement ("MSS") rating her limitations from physical impairments,[8] and she failed to provide her own function report, though she was represented by counsel and the agency requested her self-report on activities of daily living. Tr. 138. Dr. Mel Moore conducted the state agency review of Plaintiff's records on July 12, 2016. Noting that Plaintiff failed to submit a function report, Dr. Moore found insufficient evidence in the medical record to determine disability. Tr. 138.

Contrary to Plaintiff's assertion that the ALJ failed to support his determination with rationale and evidence, this Court finds in the ALJ's decision an ample inventory

---

[8] Plaintiff did provide a medical opinion regarding her mental impairments not at issue here. Tr. 540. Plaintiff attempted to supplement the record before the Appeals Council with additional medical records, including an MSS by Dr. Mary Ann McCollough dated November 8, 2018. Tr. 25-27. In its denial dated May 15, 2019, the Appeals Council declined to accept this evidence. Under 20 C.F.R. § 404.970, the Appeals Council will consider additional evidence only when a claimant has shown good cause for failing to submit it sooner *and* such evidence would change the outcome of the decision. The record submitted to the Appeals Council contains no argument asserting good cause, and the Appeals Council found no reasonable probability that the additional evidence would change the outcome. Tr. 2. Plaintiff does not challenge the Appeal's Council's action in this regard and does not reference Dr. McCollough's MSS in her brief before this Court.

and analysis of the record. Tr. 40-45.  The decision reflects the ALJ's full consideration of Plaintiff's treatment records, mostly notably with Plaintiff's primary orthopedic specialists, Drs. Bowen and Burns, as well as Plaintiff's consultation with Dr. Willing at Washington University, whose examination and counseling thoroughly illuminate the nature of EDS.  Tr. 550-553.  The Court does not agree with Plaintiff's assertion that the ALJ formed his own medical opinion rather than relying on the opinions of treating sources (though Plaintiff did not submit a formal MSS).  The ALJ readily acknowledged Plaintiff's musculoskeletal conditions as consistently reflected in her treatment records, and he devised the RFC accordingly by limiting Plaintiff to sedentary work, with additional restrictions to accommodate the reduced range of motion in her upper extremities.

It is the ALJ's responsibility to determine a claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own description of her limitations.  *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018).  Plaintiff's physical impairments clearly limit her capacity for physical work requiring strength and mobility, but nothing in the medical record suggests that she is incapable of sedentary work, which was her burden to prove.  And though Plaintiff testified that she cannot sit for long periods and gets lightheaded when standing (Tr. 91), the ALJ properly evaluated that testimony in the context of the whole record, specifically finding that the objective evidence did not

13

support Plaintiff's claim.  Tr. 40.  This is a proper exercise of the ALJ's fact-finding discretion.  "Credibility determinations are the province of the ALJ."  *Id*. at 1090.[9]

The ALJ's thorough decision belies Plaintiff's assertion that he failed to provide support and rationale for the RFC.

**Pain Evaluation**

In her second point, Plaintiff contends that the ALJ failed to conduct a proper evaluation of her pain.  More specifically, Plaintiff argues that the ALJ failed to make an express credibility determination detailing the reasons for discrediting Plaintiff's subjective complaints, using the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984).  Plaintiff notes that, in addition to her own testimony, the medical record consistently confirms her complaints, regularity of treatment, and compliance with various medications, including narcotics.  Given this record and the absence of an express credibility determination, Plaintiff submits that the ALJ's decision is not supported by substantial evidence.

As the Commissioner correctly responds, and as the Court has previously noted, SSR 16-3p, published March 28, 2016, eliminates the use of the term "credibility," expressly rescinding SSR 96-7p.  Instead, the agency "will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms" and "will evaluate whether the statements are consistent with objective medical evidence and the

---

[9] Although SSR 16-3p, published March 28, 2016, eliminates the use of the term "credibility," expressly rescinding SSR 96-7p, Eighth Circuit precedent continues to employ the term to describe an assessment of whether the evidence supports a claimant's subjective symptoms.

14

other evidence." *Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (Oct. 25, 2017). Eighth Circuit precedent continues to employ the term "credibility" to describe this assessment of whether the evidence supports a claimant's subjective symptoms. *See e.g.*, *Nash*, 907 F.3d at 1090.

At its essence, Plaintiff's second point mirrors her first point in challenging the ALJ's RFC determination as failing to account for her musculoskeletal conditions. Contrary to Plaintiff's assertion, however, the ALJ did not disregard Plaintiff's subjective complaints of pain. The ALJ acknowledged that the medical records consistently reflected lumbar and myofascial tenderness and orthopedic abnormalities affecting the right hip and shoulder. However, the ALJ also noted that the records did not reflect any signs of acute distress, and Plaintiff received some relief from her pain with prescribed medications. Tr. 44. These findings are supported by the medical evidence, which consistently reflect pain attributable to EDS, treated with medications. Tr. 479-493, 518-539.

Put simply, the ALJ largely believed Plaintiff's subjective complaints of pain because they were supported by the medical evidence, but the ALJ did not believe that Plaintiff's pain rendered her completely disabled. Rather, ALJ devised an RFC to accommodate Plaintiff's musculoskeletal pain by restricting the RFC to sedentary work with specific limitations on lifting, standing, sitting, and overhead reaching. Tr. 39. This is well within the "available zone of choice." *Papesh*, 786 F.3d ay 1131. Plaintiff's suggestion that the ALJ committed reversible error by failing to weigh the evidence in her favor ignores this Court's standard of review.

## CONCLUSION

The ALJ's decision demonstrates that he carefully considered Plaintiff's symptoms and complaints but concluded that the limiting effects she alleged were not entirely consistent with the medical evidence on the whole record. This is a proper exercise of the ALJ's discretion. While the Court must take into account "evidence that both supports and detracts from the ALJ's decision, … as long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). When it is possible to draw different conclusions from the evidence and one represents the Commissioner's findings, this Court must affirm the decision. *Chaney*, 812 F.3d at 676. On the present record, the Court concludes that the ALJ's decision was well within the available zone of choice. The ALJ's decision reflects that he considered the whole record, and his RFC determination is supported by substantial evidence therein.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 16th day of November 2020.